## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | |
|---|---|
| **MARIA MERCEDES BADIA TAVAS, ISABEL CRISTINA BADIA HEWETT, and HECTOR LUIS BADIA, in their capacity as co-agents on behalf of Hector J. Badia and Irene M. Badia** | **PLAINTIFFS** |
| **v.** | **CAUSE NO. 1:24cv75-LG-BWR** |
| **STATE FARM FIRE AND CASUALTY COMPANY** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESSES AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this lawsuit, Mercedes Tavas, Isabel Hewett, and Hector L. Badia ("Plaintiffs") seek additional funds under a State Farm homeowners' insurance policy for a water loss at their parents' home. State Farm has filed a [46] Motion to Strike Plaintiffs' Expert Witnesses and a [48] Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment that have been fully briefed by the parties. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that State Farm's Motion to Strike should be denied. State Farm is entitled to summary judgment as to Plaintiffs' loss of use claim. Furthermore, as a matter of law, Plaintiffs have only provided sufficient evidence to recover for alleged damage to some of the personal property in the home. Since Plaintiffs have represented that they are not seeking extracontractual or punitive damages, that portion of State Farm's Motion is moot. State Farm's

Motion for Summary Judgment is denied in all other respects.

## BACKGROUND

State Farm issued a homeowners' insurance policy to Mr. Hector J. Badia and Mrs. Irene M. Badia (sometimes collectively referred to as "the Badias") that provided $219,900.00 in coverage for their home on Palmer Drive in Gulfport, Mississippi. The policy also provided $164,925.00 in coverage for personal property, and $65,970.00 for loss of use. The policy imposed a $2,199.00 deductible.

After the COVID-19 pandemic subsided, Plaintiffs realized that the Badias were suffering from dementia and living in a home that was in poor condition. As a result, Plaintiffs decided to temporarily move the Badias to Florida so that they could live near their son while Mr. Badia underwent eye surgery.

Two of the plaintiffs—Tavas and Hewett—determined that the Badias' Gulfport home needed to be remodeled before their parents moved back in because it had "a pretty serious insect problem." Hewett Dep. [48-2] at 20.[1] In January 2022, Hewett asked the City of Gulfport to turn off the water to the Badias' home, and she hired Jordan Champagne to demolish the home's kitchen and both of its bathrooms. Hewett and Tavas moved some of their parents' furniture to a storage facility in February 2022. They planned to restore the kitchen and bathrooms once they obtained a power of attorney to act on behalf of the Badias.

On April 13, 2022, a neighbor notified Hewett that the Badias' house had

---

[1] During her deposition, Tavas initially stated that the home had an insect infestation, but she eventually clarified that "some animals had entered the home." Tavas Dep. [46-3] at 36.

flooded, so Tavas went to the house and observed that water was spewing out of lines in the kitchen and bathrooms that had been cut during demolition. The following day, Hewett and Tavas hired Champagne to remove "wet and water-damaged materials from the Property, including flooring, carpeting, baseboards, and drywall up to four feet high in many rooms of the home." Pls.' Mem. [51] at 2. He also "removed and disposed of some destroyed contents/personal property from the home." *Id.* Plaintiffs obtained power of attorney to act on the Badias' behalf on April 16, 2022.

Hewett testified by deposition that she told the Badias' insurance agent, Rocky Eleuterius, about the water damage on either the following day or soon thereafter, but he told her to pursue a claim against the City of Gulfport for prematurely turning the water on. Hewett called the City of Gulfport and learned that its subcontractor, H2O Innovations, had intended to turn off the water for lack of payment, but it had inadvertently turned the water on. According to a timeline that Hewett drafted, she pursued a claim against H2O Innovations until July 2022.

On or about July 15, 2022, Plaintiffs retained Corbitt Public Adjusting, which sent a letter informing State Farm that it was representing the Badias in their insurance claim. Herman Johnson inspected the property on Corbitt's behalf on September 1, 2022, and he prepared an estimate and a report based on his findings and calculations. In his report, he noted:

> The House is a single story, wood framed dwelling that was in the process of having minor plumbing repairs updated. The water was shut off during the repair of plumbing in the kitchen. When the water was turned back on it caused water to flood the house causing damage

to the drywall, insulation, flooring, kitchen cabinets, doors, and trim as outlined in our estimate.

Johnson Report [48-21] at 2. On page 23 of his estimate, he opined that the replacement cost value of the damage to the house was $162,455.89. He also estimated that the Badias were entitled to $25,300.00 for loss of use. His estimate did not include damage to the Badias' personal property because Plaintiffs had not provided information concerning that claim.

During his deposition, Mr. Johnson testified that he was not able to determine how high the water rose in the house during his inspection because the damaged materials had been removed prior to his inspection. When he inspected the property and drafted his estimate, he was unaware that the kitchen and bathrooms had been gutted prior to the water loss. As a result, he assumed that the kitchen and bathrooms had been damaged by the water loss, and he included those rooms in his initial estimate.

In September 2022, Michael Strayer inspected the property on behalf of State Farm. He determined, from his inspection and his review of the claim file, that the kitchen and bathrooms had been gutted prior to the covered loss. He also noted that the laundry room and one of the bedrooms had not been subjected to moisture. Therefore, he did not include these rooms in his estimate. Mr. Strayer opined that the replacement cost value of the damaged dwelling was $26,930.47. After deducting $19,562.10 for depreciation and the $2,199.00 deductible, State Farm paid the Badias $14,169.37. When making payment, State Farm explained that additional funds would be available if repairs were made within two years of the

date of loss.

On October 20, 2022, State Farm sent a letter to Corbitt stating:

We will give your claim further consideration once we receive the requested information as outlined below:

List of destroyed personal property with:
Name of Item Destroyed
Replacement cost of this item
Age of the item that was destroyed

Letter [48-12] at 1.  State Farm included the policy's provisions concerning the insureds' duties in the letter, and it stated that its request for additional information should not be construed as "a waiver of any policy provisions, conditions, and/or reasons for denial that might be discovered upon later investigation."  *Id.* at 3.

On October 25, 2022, Corbitt faxed a [59-3] Sworn Partial Proof of Loss to State Farm that Hewett had signed on behalf of the Badias.  Pursuant to Johnson's estimate, the proof of loss claimed that the replacement cost value for damage to the dwelling was $162,455.89, and the damages for loss of use totaled $25,300.00.  The section of the proof of loss pertaining to Coverage B, which provided coverage for personal property damage, contained the following notation: "NA."  Proof of Loss [59-3].  The proof of loss further provided that actual cash value was "To be Determined."  *Id.*

The Badias filed this lawsuit against State Farm in the Circuit Court of Harrison County, Mississippi, on February 22, 2024, and State Farm removed the case to this Court.  Plaintiffs retained a licensed professional engineer, Neil B. Hall,

Ph. D., who inspected the property on May 13, 2024, and took photographs. He opined:

> I consider the line items in the cost estimate [provided by Mr. Johnson] consistent with the industry remediation protocols published in ANSI/IICRC S500 Standard for Professional Water Damage Restoration and NEMA Evaluating Water-Damaged Electrical Equipment. The cost estimate includes line items for replacing drywalls, floor coverings, kitchen cabinets, bathroom vanities, doors and door casings and drying, dehumidification, disinfecting, ductwork cleaning and pack-out, all of which are typically performed as part of a flood remediation.

Def.'s Mot., Ex. W [46-23] at 2. Citing a [14-2] Joint Certification of Power of Attorney signed on April 16, 2022, Plaintiffs filed an [17] Amended Complaint on the Badias' behalf on May 28, 2024.[2]

Upon learning during discovery that the kitchen and bathrooms had been demolished before the water loss, Mr. Johnson drafted a revised building damage report that excluded the cost of demolishing and restoring these rooms. He also removed his calculations concerning the laundry room and the fourth bedroom because water did not reach that part of the house. Under the mitigation section of the report, he included $4,200.00 based on Champagne's invoice for removing water-damaged items. Mr. Johnson opined that the replacement cost value of the damaged property totaled $96,940.83, and the actual cash value of the damaged

---

[2] Although both Tavas and State Farm are citizens of Illinois, the amendment did not destroy diversity of citizenship because the Badias are citizens of Mississippi. *See* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent."); *New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1055 (5th Cir. 2025) ("The citizenship of the real parties in interest is determinative of diversity jurisdiction.").

property was $83,795.49.  He explained that the insureds were "still compiling [a]

personal property inventory list."  Revised Report [48-26] at 14.

In September 2024, State Farm designated Mr. Strayer as an expert, and he

submitted a report discussing the opinions of Mr. Johnson and Dr. Hall.  After

Plaintiffs produced Champagne's April 2021 invoice to State Farm during discovery,

it paid Plaintiffs an additional $4,200.00.

After reviewing Mr. Strayer's 2024 report and Mr. Johnson's supplemental

estimate, Dr. Hall supplemented his report and agreed that the kitchen and

bathrooms were fully gutted prior to the flood loss.  None of Plaintiffs' expert

reports discussed personal property damage, but Plaintiffs eventually prepared and

produced a list of damaged contents to State Farm during discovery.  They claim

that the damaged personal property cost $68,100.00 when purchased.

State Farm now asks the Court to strike Plaintiffs' proposed expert

witnesses—Mr. Herman Johnson and Dr. Neil B. Hall.  It also seeks summary

judgment, or in the alternative, partial summary judgment on several grounds.

## DISCUSSION

## I.  STATE FARM'S MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESSES

The proponent of expert testimony must prove by a preponderance of the

evidence that its expert is qualified by knowledge, skill, experience, training, or

education, and that his proposed opinions are both reliable and relevant.  Fed. R.

Evid. 702; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

## A. WHETHER DR. HALL IS QUALIFIED TO OFFER TESTIMONY CONCERNING FLOOD REMEDIATION

State Farm argues that Dr. Hall is not qualified to opine that Mr. Johnson's report is consistent with industry flood remediation protocols because "[h]is experience is in the realm of engineering, urban planning, project management, and design— not remediation."  Def.'s Mem. [47] at 15.  It further claims that Dr. Hall's "only notable experience with remediation is limited to mold and microbial growth—which are excluded under the Badias' policy."  *Id.*

The Fifth Circuit has held that "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).  An expert may not "go beyond the scope of his expertise in giving his opinion."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

However, a "witness qualified as an expert is not strictly confined to his area of practice but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."  *Hart v. Howard*, No. 1:11CV83 LG-RHW, 2012 WL 3000654, at *1 (S.D. Miss. July 23, 2012) (quoting *Meadowcrest Living Ctr., LLC v. Hanover Ins. Co.*, No. 06–3210, 2008 WL 2959707, at *6 (E.D. La. July 30, 2008)) (internal quotation marks omitted).  A witness can also be qualified as an expert "even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge or skill."  *Miss. Phosphates Corp. v. Analytic Stress Relieving, Inc.*, 402 F. App'x 866, 872 (5th Cir. 2010).

-8-

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citations omitted).  "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function.  After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity."  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded on other grounds by* Fed. R. Evid. 103(a).

Dr. Hall has been a licensed civil engineer[3] and architect for over forty years.  He served as a commissioned officer in the Army Corps of Engineers and the Navy Civil Engineer Corps.  He has a doctorate in Urban Studies from the University of New Orleans as well as graduate degrees in Systems Management and Landscape Architecture.  According to his curriculum vitae, he "has specialized in the investigation of building performance, structural health and failure analysis" since 1995.  Def.'s Mot., Ex. CC [46-29] at 1.  Furthermore, he has "[i]nspected thousands of buildings and structures damaged by hail, windstorms, hurricanes, tornados, cold weather and floods," and he has been "[q]ualified in federal, state and local courts as an expert witness in the fields of architecture, civil engineering, landscape

---

[3] Civil engineers "plan, design, and supervise the construction and maintenance of building and infrastructure projects."  Bureau of Labor Stat., U.S. Dep't of Labor, *Occupational Outlook Handbook*, Civil Engineers, https://www.bls.gov/ooh/architecture-and-engineering/civil-engineers.htm (last visited Feb. 5, 2025).

architecture, building code compliance, roof consultant, traffic engineering and highway safety." *Id.* at 2.

The Court finds that Dr. Hall is sufficiently qualified to offer opinions concerning flood remediation. State Farm can point out any alleged gaps in his experience or knowledge at trial, thus enabling the jury to determine the proper weight to assign to his testimony. *See* Wright & Miller, *§ 6264.1 Bases for Qualifying an Expert*, 29 Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. June 2024) ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility.").

### B. WHETHER THE OPINIONS OF MR. JOHNSON AND DR. HALL ARE RELIABLE

Rule 702's reliability inquiry assesses the validity of the expert's reasoning and methodology underlying the testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). The Court must exclude any opinions that are solely based on subjective belief or unsupported speculation. *See id.* at 590. "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

Nevertheless, the Court's gatekeeper function does not replace the traditional adversary system or the jury's role. *See Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony, the district court must accord the "proper deference to the jury's role as

the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). Whether the expert's opinions are correct is not for the Court to decide. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

State Farm argues that Mr. Johnson's opinions are unreliable for the following reasons:

> Johnson relied on a series of faulty assumptions rather than fact in generating his original estimate. When State Farm confronted the Plaintiffs and Johnsons [sic] with numerous flaws in Johnson's estimate, Johnson submitted a revised estimate in an attempt to remedy his errors, deleting five (5) rooms entirely from his estimate as well as line items for ceiling damage, lighting, etc. However, Johnson's revised estimate is also based on a series of groundless assumptions, illustrating his lack of reliable methodology. As examples, his revised estimate includes an invoice to Jordan Champagne that Johnson was unaware had already been paid, as well as line items for "pack-out," although Johnson admits he is unaware if any contents actually sustained damage due to the April 13, 2022, leak. . . . Moreover, although he did not identify any damage to any of the electrical wiring of the home, his revised estimate includes new electrical wiring and conduit. . . . However, there was no conduit before the loss, and Johnson did not know if the building codes even require conduit. . . .

Def.'s Mem. [47] at 18. As for Dr. Hall, State Farm claims that his opinions are unreliable because he "merely parrots Johnson's findings without applying any reliable methodology." *Id.* at 19.

"Generally, errors made by an expert witness in calculating or inputting data while utilizing a *Daubert*-compliant computer program fail to justify the exclusion of his or her testimony. Miscalculations and inaccuracies go to the weight of the evidence and not its admissibility." *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14CV175-KS-MTP, 2015 WL 4915701, at *7 (S.D. Miss. Aug. 18, 2015) (internal quotation

marks, alterations, and citations omitted); *see also Voth v. State Farm Fire & Cas. Ins. Co.*, No. CIV.A. 07-4393, 2009 WL 411459, at *6 (E.D. La. Feb. 17, 2009) (holding that Dr. Hall's reliance on incorrect information in forming some of his opinions affected the weight of his opinions, not their admissibility "especially, where[,] as here, he has modified his opinion to take into account the actual facts").

All of State Farm's arguments related to the reliability of the opinions of Johnson and Dr. Hall can be effectively addressed on cross-examination at trial. The issues State Farm raises do not warrant exclusion of these experts' opinions.

### C.  WHETHER DR. HALL'S OPINIONS CONCERNING MOLD DAMAGE SHOULD BE EXCLUDED

State Farm asks the Court to strike Dr. Hall's opinions concerning mold because the policy contains an exclusion for mold damage.  Thus, State Farm's argument implicates Rule 702's relevance requirement.  *See* Fed. R. Evid. 702(a) (requiring the proponent of expert testimony to show it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").  When determining relevance, "the Court asks whether the expert's reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence."  *Daubert*, 509 U.S. at 591.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id.*

The Court must examine the context of Dr. Hall's statements concerning mold before it can determine their relevance.  State Farm's expert, Mr. Strayer, stated that there is "no evidence that water flowing from either kitchen or bathroom

supply lines . . . created the volume of bulk water to extend up the walls higher than the door thresholds." Strayer Rep. [48-25] at 4. Thus, he opined that Mr. Johnson's report "greatly expanded" the scope of damage in his estimate. *Id.* In his supplemental report, Dr. Hall disputed Mr. Strayer's opinion. He explained that photographs of "mold growth to a height about six inches above the floor level" was evidence that:

> direct contact is not the only way flood water damages walls. It rises between baseboards and gypsum wallboard by capillary action which is why the S500 Standard calls for removing baseboards to assist drying. It rises in the gypsum wallboard itself by diffusion through porous material. The result is clearly seen in Figure 3, where mold growth has ensued from the excessive moisture in the drywall. Water seeks its own level. It is reasonable to assume the floor coverings in rooms at the same level as the [k]itchen were inundated with flood water. The [f]amily [r]oom is lower. In these rooms, it is necessary to remove the floor coverings, baseboards, and lower 4 feet of gypsum wallboard (referred to as a "flood cut"). The industry standard to remove the lower 4 feet is because the labor and material cost to adjoin two tapered factory edges is cheaper than mudding/taping/floating/sanding a cut lower to the floor.

Hall Suppl. Rep. [46-27] at 3. There is no indication that Mr. Johnson or Dr. Hall included mold remediation in their estimates or that Plaintiffs are attempting to recover for mold remediation.

Plaintiffs have demonstrated that it is more likely than not that Dr. Hall's opinions concerning the manner in which water wicks up walls would be helpful to the jury's determination regarding the extent of the water damage in the Badias' home. As a result, the Court will permit Dr. Hall to cite the height of the mold as evidence of the height of water damage in the home.

### D. WHETHER THE EXPERTS' OPINIONS SHOULD BE EXCLUDED PURSUANT TO FED. R. EVID. 403

Fed. R. Evid. 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." State Farm's arguments concerning Rule 403 once again relate to the reliability of the opinions of Dr. Hall and Mr. Johnson. These arguments are not well taken for the reasons stated previously. State Farm will not be unduly prejudiced by admission of these experts' testimony because State Farm can address these issues on cross-examination.

## II. STATE FARM'S MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). "Factual controversies are resolved in favor of the non-moving

party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Since subject matter jurisdiction in this case is based on diversity of citizenship, the Court applies the substantive law of the forum state—Mississippi. *Cap. City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). "Mississippi treats insurance policies as contracts, which are to be enforced according to their provisions." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 688 (5th Cir. 2014) (quotation marks omitted). Therefore, courts must give effect to the plain meaning of an insurance policy's clear and unambiguous language. *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (Miss. 2006).

## A. PLAINTIFFS' DWELLING CLAIM

### 1. THE POLICY'S CONDITIONS

State Farm argues that Plaintiffs are not entitled to recover any additional funds under the policy because they failed to comply with two of the duties imposed by the Conditions section of the policy— the notice requirement and the proof of loss requirement.

#### a. NOTICE

The Mississippi Supreme Court has held that the notice requirement confers valuable rights upon the insurer that enable it to investigate a claim. *Jackson v. State Farm Mut. Auto. Ins. Co.*, 880 So. 2d 336, 343 (Miss. 2004). However, an insured's failure to provide timely notice generally does not void coverage unless the

insurer shows it was prejudiced by the late notice.  *Id.* at 341; *but see Bolivar Cnty. Bd. of Sup'rs v. F. Ins. Co.*, 779 F.2d 1081, 1086 (5th Cir. 1986) (holding that an insurer is not required to demonstrate prejudice if the policy clearly provides that notice is a condition precedent to coverage).  The questions of whether the insured gave timely notice and whether the insurer has demonstrated prejudice are generally questions of fact to be decided by the jury.  *Lawler v. Gov't Emps. Ins. Co.*, 569 So. 2d 1151, 1153 (Miss. 1990).  "Courts may determine the issue as a matter of law, however, when the material facts are undisputed."  *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236, 239 (5th Cir. 2008).

The Badias' policy provides:

> After a loss to which this insurance may apply, you must cooperate with [State Farm] in the investigation of the claim and also see that the following duties are performed:

> a. give immediate notice to [State Farm] or [its] agent . . . .

Policy [48-6] at 41.  Plaintiffs assert they complied with this requirement because Hewett told the Badias' insurance agent—Rocky Eleuterius— about the water claim "[v]ery close to when the date of loss occurred, probably the 14th."  Hewett Dep. [51-1] at 44.  State Farm counters that, even if Hewett told Mr. Eleuterius about the water loss, Plaintiffs decided to pursue a claim against the City of Gulfport's contractor — H2O Innovations—instead of filing a claim with State Farm.  In support of this argument, State Farm cites the following explanation that Plaintiffs' public adjuster emailed to State Farm on August 31, 2022:

> [T]he way I understand it is that the insured was under the impression the vendor would be paying for the damages but eventually changed

> their tune which resulted in them filing this claim[.]  [T]heir daughter
> has also since intervened and encouraged them to file this claim[.]
> [M]ost of the damage has been removed[,] but there is still visible
> water damage that can be observed[.]

Corbitt Email [59-4] at 2.  State Farm urges the Court to "find that Plaintiffs'

asserted notice to their agent rings hollows [sic] when they simultaneously elected

to not open a claim, which would have provided State Farm an opportunity to

inspect the property prior to Plaintiffs' mitigation work."  Def.'s Supp. Mem. [65] at

5.

     The policy only required Plaintiffs to immediately provide notice to State

Farm or its agent.  Hewett testified that she notified State Farm's agent about one

day after the water loss, and no testimony has been presented to the contrary.  The

Court has not located any deadline for filing a claim in the policy, and it would be

inappropriate for the Court to add such a requirement to the policy.  *See Miss. Farm*

*Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1086 (Miss. 2022) (holding that a

court "cannot add or take away the plain language of an insurance policy").

Therefore, State Farm's argument that Plaintiffs are not entitled to coverage

because they initially decided not to file a claim is not well taken.

     **b. PROOF OF LOSS**

     State Farm also asserts that Plaintiffs' failure to provide an accurate and

timely proof of loss prevents further recovery.  "[T]he submission of a proof of loss is

a distinct obligation from the insured's duty to provide notice of an occurrence or

loss."  *First Pentecostal Church v. Brotherhood Mut. Ins. Co.*, 3:09cv34-TSL-FKB,

2010 WL 2817071, at *5 n.6 (S.D. Miss. July 15, 2010) (quoting 13 *Couch on*

*Insurance*, § 186:19 (3d ed. 2005)).  The Badias' policy required submission of a signed, sworn proof of loss to State Farm within sixty days after the loss that provided, to the best of their knowledge and belief:

> (1) the time and cause of loss;
> (2) interest of the insured and all others in the property involved and all encumbrances on the property;
> (3) other insurance that may cover the loss;
> (4) changes in title or occupancy of the property during the term of this policy;
> (5) specifications of any damaged structure and detailed estimates for repair of the damage;
> (6) an inventory of damaged or stolen personal property . . . ;
> (7) receipts for additional living expenses incurred . . . .

Policy [48-6] at 41.  It is undisputed that Plaintiffs provided their proof of loss over six months after the water loss, but Plaintiffs claim that State Farm waived the proof of loss requirement by adjusting their dwelling claim before the proof of loss was provided.

Waiver is the "voluntary surrender of a right."  *Titan Indem. Co. v. Hood*, 895 So. 2d 138, 150 (Miss. 2004).  "To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived."  *Id.* at 150–51.  An insurer waives the proof of loss requirement when "there is ample evidence in the record, if believed by the jury, to show that the agent of the insurance company adjusted the loss, without requiring a written proof of loss." *Canal Ins. Co. v. Howell*, 160 So. 2d 218, 222 (Miss. 1964).  Usually, waiver must be proved by clear and convincing evidence.  *Hinton v. Pekin Ins. Co.*, 268 So. 3d 543, 557 (Miss. 2019).  "Waiver is a fact question for the jury, unless the evidence is so

-18-

clear that reasonable minds could not differ." *Armstrong v. Miss. Farm Bureau Cas. Ins. Co.*, 66 So. 3d 188, 192 (Miss. Ct. App. 2011).

Plaintiffs' proof of loss was clearly untimely. However, a genuine issue of material fact exists whether State Farm waived the proof of loss requirement in the policy by adjusting and paying the dwelling claim and continuing to seek additional information from Plaintiffs after the deadline for submitting a proof of loss.

## 2. PLAINTIFFS' EXPERT TESTIMONY

State Farm next asserts it is entitled to summary judgment because Plaintiffs' experts have not presented admissible opinions in support of their dwelling claim. The Court has determined that portions of the proposed opinions of Mr. Johnson and Dr. Hall are admissible, so State Farm's argument is not well taken.

## B. PLAINTIFFS' CONTENTS CLAIM

Plaintiffs seek $68,100.00 for alleged damage to personal property in the Badias' home. Tavas testified that Plaintiffs' estimate of the purchase price of these items was based on their personal experience and knowledge. State Farm claims it is entitled to summary judgment because Plaintiffs have not produced expert testimony supporting the property values they seek, and they have not fulfilled their duty to inventory the damaged contents.

## 1. WHETHER EXPERT TESTIMONY CONCERNING DEPRECIATION OF PERSONAL PROPERTY IS REQUIRED

The policy's Loss Settlement provision concerning contents coverage states that State Farm will only pay the actual cash value of the damaged property "if

property is not repaired or replaced within two years after the date of loss." Policy [48-6] at 40. The policy defines "actual cash value" as "the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation." *Id.* at 22. "The depreciation deduction may include such considerations as: a. age; b. condition; c. reduction in useful life; d. obsolescence; and e. any pre-loss damage including wear, tear, or deterioration of the damaged part of the property." *Id.*

Plaintiffs rely on the opinions of Tavas, a lay witness, in an attempt to establish the value of the personal property. The Federal Rules of Evidence provide that a lay witness may offer testimony in the form of an opinion if the testimony is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Meanwhile, the Fifth Circuit has held that "the owner of property is qualified by his ownership alone to testify as to its value." *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 433 (5th Cir. 1982). The court has applied this principle to various types of property. *See, e.g., King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) (the value of a deceased musician's name and likeness); *United States v. Laughlin*, 804 F.2d 1336, 1340 (5th Cir. 1986) (the value of five stolen tiger cubs); *LaCombe*, 679 F.2d at 433 (the value of a home and furnishings that were destroyed by fire). However, an owner's testimony on his property's value "cannot be based on naked conjecture or solely speculative factors." *King*, 179 F.3d at 376. Based on

this line of cases, State Farm's argument that expert testimony is required is not well-taken.

Since the parties have not briefed the questions of whether Tavas is entitled to a "presumption of special knowledge [that] would arise from ownership," due to her status as the Badias' daughter and power of attorney, or whether her opinions are based on "naked conjecture or solely speculative factors," the Court will not address those issues at this time. *See Gochman v. Oakley*, 44 F. App'x 652, at *1 (5th Cir. June 7, 2002); *King*, 179 F.3d at 376. The Court will next address State Farm's argument that Plaintiffs breached their duty to provide an inventory of the personal property that was allegedly damaged by the water intrusion.

## 2. THE INSUREDS' DUTIES

The policy requires the insureds to:

c. prepare an inventory of damaged . . . personal property:
     (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and
     (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory[.]

Policy [48-6] at 41. Plaintiffs first list a piano that was damaged because it was standing on wet carpet. Tavas opined that the piano is antique, but Plaintiffs stated that the piano was fifty years old in their discovery responses. Next, Plaintiffs seek $1,000.00 for a grandfather clock that the Badias purchased in the 1990s. In discovery responses, Plaintiffs testified that the clock was approximately

thirty years old, but Plaintiffs' attorney argues that the clock is antique in Plaintiffs' Memorandum.

Plaintiffs claim that a solid-wood hutch that was purchased in Mexico in the 1970s is worth $1,000.00. They further demand a total of $600.00 to replace two end tables and one coffee table that were purchased in the 1970s. And, they seek $500.00 for two plywood shelving units that were purchased in the 1970s.

Plaintiffs allege that an unspecified number of towels and fifteen sets of bedsheets that were purchased in the 1990s were damaged by moisture that accumulated in the house after the water loss. They seek $1,000.00 for these items.

Plaintiffs claim that $55,000.00 worth of clothing and shoes that were purchased between 1980 and 2021 should be replaced due to the water loss. They measured the clothing in feet. Some shoes that were in the bottom of the closet were soaked with water, but the type and quantity of shoes are not in the record. Tavas admitted that Plaintiffs "had not gone through each and every item" of clothing. Tavas Dep. [48-3] at 50–54.

Plaintiffs also seek $200.00 for two sets of curtains, $3,000.00 for two queen mattresses and boxsprings, and $2,500.00 for two sofas. The curtains and sofas were about twenty years old, and the curtains were about thirty years old. Finally, Plaintiffs seek $3,000.00 for a "full wall of books on shelving." Contents List [48-29]. They claim that the books were collected over a period of thirty or forty years and some of them are expensive and irreplaceable. However, Tavas admits that Plaintiffs have not inventoried the books.

Plaintiffs did not state how many books, shoes, clothing items, or towels were damaged by the water.  They also did not describe these items in detail or provide the age of each item.  Since Plaintiffs did not comply with their duty to provide "an inventory of damaged . . . personal property . . . showing in detail the quantity, description, age, replacement cost, and amount of loss" for these items, they are not entitled to recover for any damages to these items.  *See* Policy [48-6] at 41.

Plaintiffs provided the age and quantity of the remaining items, so the Court finds that a jury should determine the amount, if any, that should recover for these items at trial.  Pursuant to the plain language of the policy, however, the Court will instruct the jury that Plaintiffs have the burden of demonstrating the market value of any antiques, as well as the actual cash value— which takes depreciation and age into account— of all other items.  *See Jackson HMA, LLC v. Morales*, 130 So. 3d 493, 499 (Miss. 2013) ("[I]t is well-understood that in an action seeking damages, the plaintiff bears the burden of proof as to the amount of damages."); *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012) (explaining that "a plaintiff seeking monetary damages for breach of contract must put into evidence, with as much accuracy as possible, proof of the damages being sought").

## C.  PLAINTIFFS' LOSS OF USE CLAIM

The Loss of Use section of the policy provides, "When a loss insured *causes the residence premises to become uninhabitable*, we will pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months."  Policy [48-6] at 29 (emphasis added).  The term

*habitable* means "good enough for people to live in; providing a minimal level of safety and comfort so as to make for passable living conditions." *Habitable*, *Black's Law Dictionary* (12th ed. 2024).[4]

The Badias had moved out of the home in July 2021, but Plaintiffs intended for the Badias to eventually return to the home.  Plaintiffs gutted the kitchen and bathrooms in January 2022 in order to "air out the walls" due to an insect and/or animal infestation.  Hewett Dep. [48-2] at 28–29; Tavas Dep. [46-3] at 12, 16, 36.  All appliances, including the refrigerator, had been removed.  The home had no running water because the water lines had been cut during demolition, and Tavas testified that they could not turn on the home's HVAC unit because it was not working properly.

Plaintiffs moved the Badias' mattress, electrical base, and bedroom set, as well as the dining room table and chairs, the living room furniture, and some boxes of photographs, to a storage facility in February 2022.  After the April 13, 2022, water loss, they moved additional items into the same storage unit.

No reasonable jury could find that a home with no running water, appliances, or operable restrooms is habitable.[5]  Therefore, Plaintiffs rendered the home

---

[4] "Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written."  *Noxubee Cnty. Sch. Dist. v. United Nat. Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004); *see also Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) ("consult[ing] standard and legal dictionaries for definitions of words not defined within the policy").

[5] In fact, Plaintiffs' expert, Mr. Johnson, opined that the demolition of the Badias' kitchen and bathrooms rendered their home uninhabitable.

uninhabitable prior to the covered loss, when they turned off the water and gutted the kitchen and bathrooms. Since the covered loss did not render the Badias' home uninhabitable, Plaintiffs' argument that they are entitled to loss of use coverage because they could have quickly restored the kitchen and bathrooms if the water loss had not occurred is not well taken.[6]

There is no genuine issue of material fact that the house was uninhabitable prior to the insured water loss. The clear language of the policy prohibits coverage for loss of use in this circumstance. State Farm is entitled to summary judgment as to Plaintiffs' loss of use claim.[7]

## CONCLUSION

State Farm's Motion to Strike Plaintiffs' Expert Witnesses is denied. State Farm's Motion for Summary Judgment is granted to the extent that Plaintiffs seek coverage for unquantified clothing, shoes, towels, and books that were contained in the house at the time of the water loss. The Motion is also granted as to Plaintiffs' loss of use claim. The Motion for Summary Judgment is denied in all other respects. To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

---

[6] As explained previously, Plaintiffs have clarified that they are not pursuing a claim for extracontractual damages.
[7] It is not necessary for the Court to consider State Farm's argument that Plaintiffs are not entitled to loss of use coverage because the Badias were not residing in the home at the time of the covered water loss.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [46] Motion to Strike Plaintiffs' Expert Witnesses is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [48] Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment filed by State Farm Fire and Casualty Company is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED AND ADJUDGED** this the 27th day of March, 2025.

s/ *Louis Guirola, Jr.*

Louis Guirola, Jr.
United States District Judge